Good morning. Good morning. Our case for argument in our next one is United States v. Clark. We're ready to hear from the appellant. Thank you, Your Honor. My name is Barbara Woltz, and I'm representing Jessica Jean Clark today in her appeal from an 84-month sentence that was imposed by the district court after Ms. Clark pled guilty to child neglect. The district court erred in two ways. The first was at the outset of the sentencing process, he failed to correctly calculate the guideline range because he failed to find that there was an analogous guideline. And the crime of child neglect does not have a directly applicable federal sentencing guideline, so the analogous guideline should have been applied. The second way that the district court erred was even if that first error was not reversible error, the court erred again in the second part of our argument because he didn't explain how he arrived at an 84-month sentence. And that was plain error because this court has said on many occasions that a court has to explain how it arrives at a sentence and has to apply the individual facts for that individual defendant to the 3553A factors, and the court failed to do that in this case. So the rule that this court has applied in the past was in rakes, and the rule for a sufficiently analogous guideline is not a match, which is one word that the government used in their brief. It does not need to be a match. If it was a match, it wouldn't be an analogy, but here it needed to be in the ballpark and it needed to be a plausible analogy. And using that standard, the assault guideline was a sufficiently analogous guideline here, and again that would have been just at the outset of the court's sentencing process. All federal courts since the Sentencing Reform Act start in the same place with the applicable guideline and with the correctly calculated guideline range. The difficulty here it seems, and it's been argued in briefs, that we really don't have an analogous guideline. If you're looking at a situation which we have here of child neglect, which is an action of omission rather than commission, and one thinks of assault as an active commission. Yes, Your Honor, but under the federal sentencing guidelines, neglect actually is usually a much, is a more lenient sentence than an intentional act, and you can find that in the sentencing guidelines in the involuntary manslaughter guideline, and there's also a guideline for disposal of toxic waste, and that guideline also says that if it's, excuse me, if it's mere negligence that the sentence should be lesser than a reckless or intentional disposal of hazardous waste. And here the government is offering you a false question by saying that you cannot apply a guideline for an act of commission when the crime was one of omission, and I would point out to the court that now with McGirt, you are going to be hearing a lot more cases, at least from the state of Oklahoma and perhaps from the entire Tenth Circuit, that are going to be very similar to Ms. Clark's, where there's not going to be a directly applicable guideline, and I don't think this court wants to set a precedent of saying any time that negligence is involved in a case that the district court just gets to throw the guidelines away and start from scratch with the state statute, which here with this Oklahoma child neglect statute, it meant that the court felt that he had the complete range from zero to life, and that he had that entire range to decide. This would have only been a starting point. That's why it only needs to be in the ballpark. In Rakes, and you mentioned this quite a few times, as well as Ms. Epperle, you know, a metaphor is usually not to be taken literally, and so Judge Gorsuch, when he, in Rakes, when he lays out step one of the inquiry, he then uses the metaphor, but I don't know that we're just supposed to say, and I don't even know how the three of us are expected to say, okay, we're going to apply this metaphor by definition, not to be taken literally. Literally, we're just going to say, even if none of the elements coincide between child neglect and simple assault, that it's close enough. It's in the ballpark. How do we do that? Don't we have to try at least one element, as in Jackson, that there was at least one element between the two offenses that coincided? Yes, Your Honor, but I think there were coinciding elements here. We had harm to a child, and the assault, we go into some detail in our briefs that the assault guideline does not require an affirmative act. It can be an act of omission, that there doesn't, because of the way that the common law definition of assault was, that it can be not an act that actually touches, that has a physical touch to the child. We still think that there are elements, the harm to the child, and the fact that the statute does allow, I'm sorry, not the statute, the sentencing guideline does allow for a four-level increase when it's a child that's harmed. So we have harm to a child, and again, the fact that Ms. Clark didn't actively beat her child and therefore cause injury to the child, the fact that this was neglect rather than an affirmative touching of the child, I don't think the court should say that in this case, the district court gets to, again, just jettison the sentencing guidelines altogether. Apparently, the government would say that if Ms. Clark had hurt her child affirmatively by hitting her, that then the assault guideline would have applied here. But because this was neglect, because she did not get medical attention for her child in these horrible circumstances that she was in, that then, apparently, the district court gets to completely ignore the entire sentencing process, which is what he did here, and arrived at 84 months with no explanation, other than that the Oklahoma statute allowed anything from zero to live. I'm sorry, Judge Murphy, you're muted. Thank you for the assistance. Your analysis that you just gave, Judge Bacharach, of as to comparing the elements, that seems that same analysis would also fit involuntary manslaughter under the guidelines. And you did present that in the district court, but you have specifically abandoned that in this appeal. But that doesn't mean it goes away. That's right. Tell me why that's not a better comparable in this circumstance. I'm sorry. Tell me why that's not a better comparable involuntary manslaughter than the assault. I actually think it might be a better analogy. For reasons of what had been argued below, we decided not to pursue that here. But you, the court, get to decide this issue de novo. I think you could find that involuntary manslaughter is the most analogous guideline here. Certainly, I think all of the elements of involuntary manslaughter apply here, except for the actual element that her negligence was the causation of the death of this child. We don't know. There were no facts found on that. We don't know. That's exactly right, Your Honor. That was our argument. Which makes the second issue overlap with the first issue, correct? Exactly. It does, Your Honor. But again, I think you're right. I think this court could reverse and vacate and reverse with instructions to use the involuntary manslaughter guideline. I think that would have been an acceptable starting place as well. Again, we didn't pursue that in this appeal for reasons of what had been preserved and had not been preserved, Your Honor. I don't understand what that means. I believe at some point with the lower court that we decided to quit arguing that the involuntary manslaughter was the analogous guideline. Since we took a different position with the district court, I think we felt like we couldn't turn around and argue the opposite to this court. But again, I think you, DeNovo, get to make that decision. And what I think is important here is that one or the other of those guidelines should be found sufficiently analogous. Judge Bacharach, I completely understand what you're saying. What does in the ballpark mean? But what I think it means is, is there anything that is helpful as a starting point? Here, Judge White could have decided either one of those was sufficiently analogous and started there. And if he found that there were aggravating circumstances, he could have deviated upward and come to another sentence that was beyond those guidelines. But that's not what he did here. He simply skipped the step, the initial step. And also then, in the second part, never explained how he arrived at the 84 months. In the Mendoza case, this court said that you can't make a mere illusion, that you have to apply the facts of this particular defendant to the 3553A factors. And Judge White... Judge White, before we get fully enmeshed in the second issue, you made it sound like if we think there's a problem here on the first issue, that we have to say, well, this is sufficiently analogous, this assault or this involuntary manslaughter. Why is that so? It seems to me that we can just say that no consideration was given to that effectively, because the only way you can give effect to that is by making your findings, albeit embedded in issue two. So you can't decide the first issue until you make your findings that maybe would have satisfied the second issue. And for that reason, we don't have to say whether there was a comparable or which one is best, but saying you did not do the proper analysis for determining whether or not there was a comparable. Is that a way... I actually understand what you're saying, and I think it does reiterate that the second error and the first error are very enmeshed with each other. You're correct. I do think that the de novo standard of review allows this court, if it feels that involuntary manslaughter is the most analogous as a matter of law, I think the de novo standard allows you to tell the district court this as a matter of law is the most analogous guideline, or that the assault is the most analogous guideline. But that's... Go ahead. Go ahead, Judge Murphy. That issue has not been presented here, and the adversary process has not been brought to bear on that before this court. I'm sorry. I'm not sure I understand the question. We have no briefing. We have no analysis as to whether or not involuntary manslaughter is a comparable, an analogous situation, and should be sufficiently analogous and should apply. Yes, you are. We have no briefing on it. I don't see how we can decide that. Yes, I understand. And I think, obviously, this panel can decide how it best wants to handle that, to either remand for the district court to consider it, or to have us do additional briefing on that subject, because the court is interested in the party's views on that, and then have a new argument once that additional briefing has been finished. I think either way would be okay. I see that I only have a minute and 45 seconds left. If I could reserve that for rebuttal, please. Thank you. We're ready to hear from the Epperle. May it please the court. My name is Linda Epperle. I represent the United States. I agree with counsel that this is a somewhat confusing case because of the way procedurally that it has come to this court. But the issue that was raised by the would hold that that was not error. Secondly, there's criticism of the court's explanation of whether or not that was adequate under RETA and similar decisions. And we would argue that the RETA factors were considered in this case. Well, counsel, on that point, do we have anything beyond a recitation by the district court of the statute itself? Is there any application to the factors within 3553 to the facts of this case? I believe that, Your Honor, while there is not a specific rendering at the end of the sentencing, there was extensive fact finding and discussion that went on throughout this three-day sentencing, including in determining which of the many factual issues that were at issue should come into the pre-sentence report and which should be excluded. The court went through several pages, and we included a lot of that in our brief, where normally we would not, to show that the court was aware of the facts. They'd listened to three days of argument. They considered the supporting evidence. The court had a reason for excluding some of that information and finding other record as a whole. There was enough there. So, Ms. Epperle, do you feel like Judge White decided that the defendant was responsible for the death? I mean, that was a large subject of three expert witnesses. It occupied three days, and I read the entirety of the transcript, and I really have no idea whether Judge White thought he caused the death or not. Well, I certainly, Judge Bachrach cannot point you to a page in the record where the court said definitively this action caused the death. The court did find helpful the testimony, as the court indicated, of three experts, a government expert that said what the cause of death was, a child abuse... Well, the impression, right? The impression was... Yes, we know what the cause of death was from the medical examiner. From the child abuse expert, an MD, expert pediatrician, we know that the neglect in this case, the failure to call a doctor was a sufficient factor in the death, and the final expert, the defense expert, who was not a pediatrician, et cetera... But found credible by Judge White. Yes, was found credible, but I do not think that those are mutually exclusive testimonies. The defense expert, even if you accept what he said, there would still have been... I think he said there was a 20% to 70% chance that this person was going to die. Well, that means that there is also a very good chance, depending on where you fall in that wide range, that she would have survived if her mother had simply called for medical assistance. And within that, even if you accept the defense argument's expert, even if you accept that, there is still an indication that there's a good chance she could have survived if her mother had placed that phone call. So I think that given all that, there's enough there to support the determination the court did make. Like opposing counsel, I am concerned about the precedent that could be set by this case for the many future cases we're probably going to see like this. In this case, it was an unusual case, and I feel like the court below was presented by the defense with assault as an option or involuntary manslaughter as an option. However, deciding whether assault is an analogous guideline is not the same as saying, is there any analogous guideline? We would argue that for purposes of what was raised here, the court was correct in rejecting assault as an analogous guideline, whether for reasons of the omission commission that was argued below and argued by us on appeal, and I admit that we found no Tenth Circuit case that addresses that, or the most glaring difference between the assault guideline and what happened here, which is that a death occurred. The analogous guideline, the meaning of analogous comes from the Greek, analogos, which is proportionate. With regard to the death, the one thing that I thought everybody agreed on was that we, for purposes of the first step of the sufficiently analogous inquiry, we look at the elements and the death, the causing of a death, unless we're looking at involuntary manslaughter, if we're looking at simple assault and child neglect, death is not ingrained in the elements for either one of those offenses. So why should we look at whether it caused a death if we're only looking at a comparison of the elements? Because, Your Honor, if you look at the Nichols case, in the Nichols case, the court found that you could look to the language of the indictment, which they did there, and finding that felony murder was the appropriate guideline in Nichols, even though it was not charged, the underlying felony, what was charged, could have been sufficient for felony murder. And the government, should this court decide that there's some ballpark guideline that's analogous, or that there should be a better record developed on what might be analogous, the government would argue that that would open us up to argue that felony murder is the most appropriate guideline for this sort of case, if there in fact is one that's in the ballpark. Do we have, in this case, an analysis by the district court walking through the elements of the neglect of child under Oklahoma law versus either involuntary manslaughter or assault? Do we have that homework done by the district court? What we have is a ruling from the bench that I believe is found at around pages 497 to 499 of the record, and I think there's a paragraph where the court indicates that it considered the elements-based approach and found that the elements are not sufficiently analogous to the elements of the offenses in the guideline. That, I believe, was the extent. That's a conclusion, but we don't have the comparison that one would normally think of in trying to reach this determination. That's correct. Thank you. The court went on to also make a factual, fact-based analysis, but again, it's more of a conclusion than an analysis. You indicated that if you were going through analysis of various different offense conduct in the guidelines, that you would think either first-degree murder or second-degree murder would be more appropriate than involuntary manslaughter. Is that correct? Yes, Your Honor. Which one? First-degree murder or second-degree murder? First-degree. That would be my position where I'm arguing the case at the trial court today. I think that certainly involuntary manslaughter is not appropriate because we're not dealing with the standard of recklessness here. To say that there's child neglect is not the same as negligence, but involuntary manslaughter assumes recklessness here. She pled to be willful, and I believe she admitted willfully withholding the care. I think the indictment alleged that she willfully and maliciously did so. That's just from the terms of the indictment. Secondly, this child neglect statute under Oklahoma law is a felony, and it therefore would satisfy the felony murder rule, which the guidelines put as first-degree murder. I believe that that would be the most appropriate one, but I believe that you can look at sort of where this case would have fallen. Under the first-degree murder statute, allowing, say, a couple of points for acceptance of responsibility, you would have had a sentence in excess, a guideline, in excess of 300 months. For second-degree, you ended up with a guideline of somewhere in excess of 188 months. Here, we ended up with an ultimate sentence of 84 months, and the guideline I believe that closest fits what the court did was maybe voluntary manslaughter, which starts at a 29, and if you give a couple of points for acceptance, with her criminal history, she'd be looking at a range of 70 to 87, and her 84-month sentence would fall somewhere in there. Is it what you think Judge White did was to get that 84 months? In all honesty, looking at the record, that is my best guess. What about, can I pose another guess? Yes. At the end of the three-day sentencing, as I understand it, your counterpart in the U.S. Attorney's Office asked for 15 years, which is 180 months, and in the pre-sentence memorandum from defense counsel, they asked for time served, which at that time, not at the time of sentencing, was 12 months. Yes. If you deduct 180 minus 12, you get 168, and if you have that, you get 84 months. So my guess is Judge White split the baby. There's a lot of issues over the three days, and I'm not going to pout about any of them. He says the briefs were good, and he just split the baby. Is that how you think he got it? You asked for 180, she asked for 12, and I'm just going to play King Solomon and say halfway? Judge Blackrock, I cannot argue with your math. I believe that it would be approximately halfway between the time served and the 15 years. However, I think that it's also important to note that under the various guidelines that could have been imposed, it would have fit approximately voluntary manslaughter. I believe that Judge White, in my experience with him, has issued more reasoned decisions than simply splitting the difference. Your voluntary manslaughter argument, what is the actual range? For the voluntary manslaughter? If you started at a 29 and gave her a couple of points for acceptance, which I don't think is required under this court's decision, I believe in Romero, the range would have been 70 months to 87 months. All right. And we certainly don't concede that that's appropriate. What would the range be under involuntary manslaughter? It's extremely low. I do not recall. I'm sure opposing counsel would. I want to say it would still, I think, lead to the time served as a possible sentence that's wholly inadequate when a child has died. Again, we would urge the court to look at Nichols and the language there about felony murder if this court decides to offer, first of all, if this court decides not to affirm. But if this court should send this back for any reason, we would ask the court to leave open the option to consider all possibly ballpark guidelines in looking for one that's really proportionate. Ms. Everly, do you agree that in looking at the court's decision that there is no way in the world we can figure out what facts the judge found vis-a-vis the testimony of the medical experts? Was it, do I believe Morgan more than I do the prosecution witness? Do you agree we can't tell anything from looking at that, how he dealt with those witnesses? We can agree that he found all three to be credible. I think where we disagree with opposing counsel is that we do not believe that all of those testimonies are in direct opposition to one another, that logically there is a way to credit all three and still reach the result that was reached in this case and still provide adequate, in this case, understanding and credit for the fact that a child passed away. But however we get, well, the only way to get there is to speculate or to guess or to draw conclusions rather than looking at the words that were stated by the district court. What we have from the district court is a recognition that the court followed the provisions set out in 3553A, that there was an extensive record that the court carefully considered. We'd ask the court to affirm in this case and to not issue a presidential ruling that involuntary manslaughter or assault would have been appropriate. Thank you, counsel. Yeah, sure. I believe that the panel appears to agree with our position that the district court did not explain how he arrived at his decisions. And I agree with the panel that the three expert witnesses, I understand the intellectual argument that Ms. Epperle is making that you can reconcile them, but I think that it was very clear if you were there for these three witnesses that they conflicted and that the district court did need to make a decision. If the causation was an important element as to which law, which guideline was going to be sufficiently analogous, then we have no idea. And I would suggest that it was very likely that he found that there was no causation. But again, that's not something that we know. As you said, it's a guess because we don't have a record here. He never said, I think this expert is more credible and I give more weight to this expert opinion than I do to expert witness number two. And so I think we have to at least remand here. And I would certainly, I think that the involuntary manslaughter as a matter of law applies, but I can understand your concern that we don't even have the factual decisions that would allow us to decide what is a sufficiently analogous guideline. So we would ask that you reverse and vacate the sentence and vacate for remand for new sentencing. Thank you. Thank you both for your arguments this morning. The case is submitted.